# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FRANKLIN C. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-CV-511-GKF-PJC |
| | ) |
| DEPUTY DUSTIN DuBOISE,[1] | ) |
| Grievance Coordinator; | ) |
| SGT. ERNEST MENDENHALL[2]; | ) |
| DEPUTY ROBERTSON; | ) |
| D.O. ROBERSON; | ) |
| STANLEY GLANZ, Sheriff, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This is a 42 U.S.C. § 1983 civil rights action. Plaintiff is a prisoner and appears pro se. Before the Court is Plaintiff's amended complaint (Dkt. # 4). Plaintiff raises claims arising from incidents and conditions at the Tulsa County Jail (TCJ). In response to the amended complaint, Defendant Glanz (Glanz) filed a motion to dismiss (Dkt. # 38). Plaintiff filed a response to the motion to dismiss (Dkt. # 45). Glanz also filed a court-ordered Special Report (Dkt. ## 49, 50). Defendants DuBoise and Mendenhall filed answers (Dkt. ## 32, 33). Also, Plaintiff filed a motion requesting that the Clerk of Court correct a clerical error (Dkt. # 58). For the reasons discussed

---

[1]Plaintiff names "Deputy D. Deboise/Grievance Coordinator" as a defendant. See Dkt. # 4. In his answer (Dkt. # 32), Defendant states that his complete name is Dustin DuBoise. The Clerk shall be directed to modify the record to change defendant's name to "Deputy Dustin DuBoise, Grievance Coordinator."

[2]Plaintiff names "Sgt. Mendehall" as a defendant. See Dkt. # 4. In his answer (Dkt. # 33), Defendant states that his complete name is Ernest Mendenhall. The Clerk shall be directed to modify the record to change defendant's name to "Sgt. Ernest Mendenhall."

below, Glanz's motion to dismiss shall be granted. Defendants DuBoise and Mendenhall shall file motions for summary judgment. Lastly, Defendants Roberson and Robertson are subject to being dismissed from this action for lack of service.

As a preliminary matter, the Court notes that the "clerical errors" identified by Plaintiff have been corrected. For that reason, Plaintiff's motion to correct the errors shall be declared moot.

## *BACKGROUND*

Plaintiff's amended complaint (Dkt. # 4) is handwritten and is not a model of clarity. In the "Nature of Case" section of the amended complaint, Plaintiff writes:

> Defendants (Sgt. Mendehall [sic] & Deputy Robertson) twisted plaintiff's left arm behind his back when force wasn't needed, tearing the tendons and dislocating the rotary cup in his left shoulder, throwing him in a holding cell (barefooted) while cold air blew on him causing near death experiences, with the toilet overflowed with feces as gnats flew on the feces then back on to plaintiff's head, neck and lips breaking out in bloody soars [sic] on those spots, along with catching vitaminoses [sic] of the feet.

(Dkt. # 4 at 2). Based on those and other factual allegations, found on handwritten pages included with the amended complaint, Plaintiff identifies four (4) causes of action, as follows:

Count I: Plaintiff was deprived of his guarantee protection under out Fourteenth Amendment by using force and imposing punishment when force nor punishment was needed causing serious physical injustices, placing him in harms way while still a pretrial detainee, as well as violating the (ADA).

Count II: Plaintiff submitted a grievance regarding the deputies' misuse & abuse of power under color of state law; whereas, deputy DeBoise [sic] falsely fabricated his report impairing the integrity of the investigation in order to avoid a possible federal offense or federal lawsuit by lying that the plaintiff was combative in his report on (August 8th, 2014), however, the plaintiff wasn't charged with a battery upon a law enforcement official nor written up to support his claim depriving plaintiff of his due process seeking a legitimate remedy. 14 Amend.

Count III: Deputy Roberson violated Title: (18 U.S.C.A. § 1512) by harassing the plaintiff who is both a witness & victim in the complaint against the two

> deputies and deputy DeBoise [sic] depriving due process by corruptly obstructing the official proceeding.
>
> Count IV: Defendant Sheriff Stanley Glanz deprived plaintiff equal protection of the laws by abridging the privileges & immunities under our Fourteenth Amendment of our United states Constitution, disregarding greater state, federal, and constitutional rights by wrongfully mixing the plaintiff (who falls under the Americans With Disabilities Act) with psychologically normal inmates constituting imminent danger, and if he didn't know he should of known (see Harlow v. Fitzgerald).

(Id. at 2, 4, 6). In his request for relief, Plaintiff states that:

> Plaintiff's left arm at the shoulder pops in & out of place with the slightest move causing excruciating sharp pain with no medical assistance because deputy DeBoise's [sic] wife works in medical at (T.C.J.) constituting a deliberate indifference to a serious medical need; therefore, plaintiff requests $500,000 for physical damages & $200,000 for punitive damages.

(Id. at 6).

## *ANALYSIS*

### A. Standard for dismissal

To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. Id. at 555. However, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. Id. at 558. Twombly articulated the pleading standard for all civil actions. See Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009).

A pro se plaintiff's complaint must be broadly construed under this standard. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). The generous construction to be given the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so . . . ." Id. A reviewing court need not accept "mere conclusions characterizing pleaded facts." Bryson v. City of Edmond, 905 F.2d 1386, 1390 (10th Cir. 1990); see also Twombly, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (quotations and citations omitted)). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

**B. Claims under ADA fail to a state claim**

In a prior Order (Dkt. # 11), the Court ruled that Plaintiff's reliance on the Americans With Disabilities Act (ADA) was misplaced and that the ADA provides no legal basis for Plaintiff's request for temporary injunctive relief. See Dkt. # 11 at 6-7. The Court explained that title II of the ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff's

4

ADA-related claims concern defendants' failure to provide him the mental health treatment he desires. But the ADA does not provide a means to challenge "purely medical decisions" regarding the propriety of a course of treatment. Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) (holding decisions about efficacy of medical treatment "do not ordinarily fall within the scope of the ADA or the Rehabilitation Act"); see also Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (stating the ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; [plaintiff] was not treated worse because he was disabled. . . . The ADA does not create a remedy for medical malpractice."). Furthermore, Plaintiff does not allege that defendants denied him access to a facility program or discriminated against him because of his asserted disability. Because Plaintiff does not allege that he has been denied services that have been provided to other prisoners or otherwise allege discrimination solely based on his asserted disability, he does not state a claim under the ADA. Thus, the ADA provides no legal basis for relief in this case. Any claim for relief under the ADA is dismissed without prejudice for failure to state a claim upon which relief may be granted.

**C. Amended complaint fails to state a claim as to Glanz**

In his motion to dismiss, Glanz argues that (1) he cannot be held liable under a theory of respondeat superior, (2) the amended complaint fails to allege any causal relationship between the challenged municipal policy and the alleged constitutional violation, (3) the allegations against him do not rise to the level of a constitutional violation, (4) the claims fail because Plaintiff alleges that Glanz was not acting under color of state law, and (5) he is entitled to qualified immunity. See Dkt. # 38.

In response, Plaintiff emphasizes that had Glanz trained his subordinates "in the detection and nature of mental illnesses the incident [of excessive use of force] would of [sic] been prevented." (Dkt. # 45 at 1). Plaintiff also identifies two (2) incidents at the jail involving prisoners, described by Plaintiff as "mental health inmates," who "viciously attacked" either another inmate or a detention officer resulting in injury. Id. at 2. In addition, Plaintiff describes a third incident where an inmate at the jail suffered a heart attack[3] and a fourth incident where an inmate sought medical assistance "for his deteriorating mental state," but was sent back to his cell where he "immediately hung himself." Id. at 3. Plaintiff concludes his response by arguing that:

> [This] consistent reckless and malicious pattern . . . effecting [Glanz's] subordinates to cause serious injuries upon the Plaintiff, and guards and other inmates due to the lack of and no training in the detection and nature of mental illnesses and resulting in a complete systematic breakdown in the mental health department and the only way the superiors and the subordinates know how to deal with the disabled inmates is to punish and isolate them.

Id. at 4.

**1. Individual capacity – lack of personal participation**

    **a. Counts I, II, and III**

In Count I, Plaintiff alleges that Defendants Mendenhall and Robertson subjected him to excessive force "by twisting plaintiff's left arm behind his back, tearing the tendons & arm out of socket, throwing him in a cold cell (barefooted) where the toilet was overflowed with feces." (Dkt. # 4 at 2). In Count II, Plaintiff alleges that Defendant DuBoise "fabricated his report impairing the integrity of the investigation . . . ." Id. In Count III, Plaintiff alleges that Deputy Roberson harassed

---

[3]Plaintiff attributes the inmate's heart attack to "his deteriorating mental state." (Dkt. # 45 at 3).

Plaintiff and obstructed "the official proceeding." Id. at 6. The only allegation linking Glanz to Counts I, II and III, is that "he is in charge of Tulsa Co. Jail." See Dkt. # 1 at 1.

Plaintiff's factual allegations for Counts I, II, and III are insufficient to state a claim as to Glanz. Personal participation is an essential element of a § 1983 claim. Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976); see also Garrett v. Stratman, 254 F.3d 946, 950 n.4 (10th Cir. 2001) (noting that medical official must have "played a role in the challenged conduct" to be liable for an Eighth Amendment violation). As a result, government officials have no vicarious liability in a section § 1983 suit for the misconduct of their subordinates because "there is no concept of strict supervisor liability under section 1983." Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996) (quotation omitted). Instead, a supervisor is liable only if he is "personally involved in the constitutional violation and a sufficient causal connection . . . exist[s] between the supervisor and the constitutional violation." Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006) (quotation omitted); see also Schneider v. Grand Junction Police Dep't, 717 F.3d 760, 767 (10th Cir. 2013) (requiring a plaintiff to show an "affirmative link" between the supervisor and the constitutional violation).[4]

In Counts I, II, and III, Plaintiff fails to allege that Glanz personally participated in, had knowledge of, or acquiesced in the alleged wrongdoing giving rise to his claims. Furthermore, in

---

[4]The Court recognizes that a plaintiff may establish § 1983 liability of a defendant-supervisor by demonstrating that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Dodds v. Richardson, 614 F.3d 1185, 1199-1200 (10th Cir. 2010) (citation omitted). As discussed in more detail with regard to Count IV, Plaintiff does not allege that his constitutional harm resulted from the operation of a county policy or that Glanz acted with the state of mind required to establish the alleged constitutional deprivation.

7

those counts, it appears that Plaintiff improperly seeks to hold Glanz liable based solely on the theory of respondeat superior. See Dkt. # 4 at 3. For those reasons, Plaintiff's claims raised in Counts I, II, and III of the amended complaint fail to state a claim upon which relief may be granted as to Glanz in his individual capacity.

**b. Count IV**

In Count IV of the amended complaint, Plaintiff cites the equal protection clause[5] and alleges that Glanz (1) failed to segregate mentally ill inmates, including Plaintiff, from "psychologically normal" inmates, (2) housed Plaintiff with a "violent gang affiliate" at the jail; (3) failed to provide "mental health training" to his subordinates, (4) deprived Plaintiff of his "bipolar medication" from the date of his incarceration, August 4, 2014, and (5) has not established a "mental health pod" at the jail. For the reasons discussed below, Count IV, liberally construed as alleging claims of failure to protect, failure to provide adequate medical or mental health care, and failure to train, fails to state a claim upon which relief may be granted as to Glanz in his individual capacity.

---

[5]Plaintiff makes the conclusory allegation that the conditions of his confinement at the TCJ violated his rights under the equal protection clause. (Dkt. # 4 at 4). Equal protection "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Where a classification targets a suspect class or involves a fundamental right, it must be narrowly tailored to achieve a compelling governmental interest. KT & G Corp. v. Attorney Gen. of Okla., 535 F.3d 1114, 1137 (10th Cir. 2008). If it does not, it need only be rationally related to a legitimate government purpose. Id. Religion and race are suspect classifications. See, e.g., Abdulhaseeb, 600 F.3d 1301, 1322 n.10 (10th Cir. 2010) (religion); Save Palisade FruitLands v. Todd, 279 F.3d 1204, 1210 (10th Cir. 2002) (race). In order to violate the equal protection clause, state action must be motivated by an improper purpose, rather than merely having a disparate impact. Washington v. Davis, 426 U.S. 229, 239-42 (1976). In this case, Plaintiff makes no factual allegations supporting his conclusory claim that the conditions at the TCJ violated the equal protection clause. He does not claim to be a member of a suspect class, nor does he allege involvement of a fundamental right, nor does he claim that the medical care he received was different from that received by similarly situated prisoners at TCJ. Therefore the amended complaint fails to state a claim for violation of the equal protection clause.

### i. Failure to protect

As part of Count IV, Plaintiff alleges that:

[B]ecause Sheriff Stanley Glanz doesn't have a mental health pod, his subordinates in classifications placed plaintiff in harms way by mixing him with psychologically normal inmates deliberately housing him with a violent gang affiliate Terrence Marshall who is a Neighborhood Crips constantly putting plaintiff in fear of his life because he was always causing tension with other gang members, threatening to stab them, which would cause animosity upon the plaintiff due to being in Marshall's cell-mm.

(Dkt. # 4 at 4). Plaintiff further alleges that "[t]he misclassification came after plaintiff also stated not to classify him with a gang affiliate because plaintiff stated to them that he [had] been an innocent victim by a gang member who stabbed the plaintiff almost dying . . . ." Id. at 5.

The Eighth Amendment's prohibition against cruel and unusual punishment, not the equal protection clause as alleged by Plaintiff, imposes a duty on prison officials to protect inmates from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994). Even though the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard nonetheless provides the benchmark for such claims. Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998) (citation omitted); Frohmader v. Wayne, 958 F.2d 1024, 1028 (10th Cir. 1992).

To establish an Eighth Amendment violation based on an official's failure to protect, the inmate must show that (1) the alleged deprivation is objectively, "sufficiently serious," meaning the inmate "is incarcerated under conditions posing a substantial risk of serious harm" and (2) the prison official acted with "deliberate indifference," meaning the official knew of and disregarded an excessive risk to the inmate's safety. Farmer, 511 U.S. at 834, 837; Howard v. Waide, 534 F.3d 1227, 1236 (10th Cir. 2008). "In other words, the official must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Riddle v. Mondragon, 83 F.3d 1197, 1204 (10th Cir. 1996) (quotation omitted). It is not enough to establish that the official should have known of the risk of harm. Farmer, 511 U.S. at 837.

In this case, Plaintiff's claim of failure to protect, as alleged in the amended complaint, is insufficient to state a claim upon which relief may be granted as to Glanz. Plaintiff does not allege that Glanz was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that he drew the inference. Significantly, Plaintiff does not allege that he has been harmed as a result of his cell assignments at the TCJ.[6] He does not allege that his own mental illness exposed him to a substantial risk of serious harm. Although Plaintiff does "not have to await the consummation of threatened injury to obtain preventative relief," he must "furnish more than a conclusory claim of being afraid and aggravated." Riddle, 83 F.3d at 1205. The Court finds that the facts alleged by Plaintiff in Count IV fail to state a claim against Glanz for failure to protect.

### ii. Failure to provide adequate medical and/or mental health care

Plaintiff also claims in Count IV that he has been deprived of his "bipolar medication" since he arrived at the TCJ on August 4, 2014. See Dkt. # 4 at 4.

A pretrial detainee's right to receive adequate medical care is protected by the Due Process Clause of the Fourteenth Amendment. Oxendine v. Kaplan, 241 F.3d 1272, 1275 n.6 (10th Cir. 2001); Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). Under the Eighth Amendment standard, the

---

[6]In Count I, Plaintiff alleges that he sustained an injury as a result of the use of excessive of force by detention officers when he was booked-in to the TCJ. Although he describes injuries sustained by another prisoner and a detention officer at the hands of mentally ill detainees, Plaintiff does not claim that he himself suffered harm as a result of any cell assignment subsequent to being booked-in to the jail.

10

same two-pronged showing discussed above is required to establish a violation of the right to adequate medical care. The objective element is satisfied "if the condition has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Oxendine, 241 F.3d at 1276 (internal quotations omitted). "Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety. Farmer, 511 U.S. at 827; Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). The subjective element is satisfied when a plaintiff shows that the defendant was subjectively aware of a substantial risk of serious harm to an inmate but failed to take steps to alleviate the risk. Tafoya v. Salazar, 516 F.3d 912, 916 (10th Cir. 2008). The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Negligence does not state a claim under § 1983 for deliberate indifference to medical needs. See Green v. Branson, 108 F.3d 1296, 1303 (10th Cir. 1997). Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis or treatment also are not enough to state a deliberate indifference claim. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Plaintiff's factual allegations in the amended complaint are inadequate to state a constitutional claim for inadequate medical care as to Glanz. Nothing alleged in the amended complaint suggests that Glanz had any involvement with distribution of medication. Nothing alleged in Count IV suggests that Glanz acted with deliberate indifference with regard to Plaintiff's medical care. Plaintiff makes only a conclusory allegation that "the mental health dept. in place at the TCJ is inadequate." Plaintiff does not allege that Glanz was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Plaintiff exists, and that he drew the

11

inference. The Court finds that the facts alleged by Plaintiff in Count IV fail to state a claim against Glanz for failure to provide adequate medical or mental health care.

### iii. Failure to train

As part of Count IV, Plaintiff alleges that "Sheriff Stanley Glanz, who oversees the 'Tulsa County Jail,' doesn't have a mental health pod, nor does [sic] his subordinates have any mental health training, and the mental health dept. in place at the (TCJ) is inadequate." (Dkt. # 4 at 4).

Under § 1983, a supervisor can be held liable for failing to train his or her employees "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). A plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had "actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights," and that, armed with that knowledge, the supervisor chose to retain that training program. Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. (quoting Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 409 (1997)). "A supervisor's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. at 1359.

Here, Petitioner alleges that, when he was booked-in to the TCJ, "Defendants Sgt. Mendehall [sic] and D.O. Robertson without any mental health training used force when force wasn't needed sustaining serious injuries upon the plaintiff, throwing plaintiff in a cold, filthy isolation cell (barefooted) as a way to deal with his mental health issues constituting cruel and unusual

12

punishment, or the cruel and usual punishment upon the disabled." (Dkt. # 4 at 4). However, Plaintiff does not allege a pattern of similar constitutional violations by untrained detention officers. As a result, even if detention officers at the jail receive no training in handling mentally ill detainees when being booked-in to the jail, Plaintiff's allegations are insufficient to satisfy the deliberate indifference element necessary to state a claim against Glanz for failure to train. Furthermore, outside of the incident described in Count I, Plaintiff does not allege that he himself suffered harm as a result of deficiently trained detention officers.

Plaintiff's allegations in Count IV fail to state a claim upon which relief may be granted as to Glanz and he shall be dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### c. Glanz is entitled to qualified immunity – lack of a "mental health pod"

Glanz also asserts that, to the extent the amended complaint states a claim upon which relief may be granted, he is entitled to qualified immunity. To overcome Glanz's assertion of qualified immunity, Plaintiff must demonstrate that (1) Glanz violated Plaintiff's constitutional right, and (2) that the constitutional right was "clearly established" at the time Glanz acted. Pearson v. Callahan, 555 U.S. 223, 232 (2009); Koch v. City of Del City, 660 F.3d 1228, 1238 (10th Cir. 2011). "[F]or a right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Panagoulakos v. Yazzie, 741 F.3d 1126, 1129 (10th Cir. 2013) (internal quotation marks omitted). The correct standard for reviewing a request for qualified immunity asserted in a motion to dismiss is the same as for dismissals generally. Archuleta v. Wagner, 523 F.3d 1278, 1281 (10th Cir. 2008) (citing Moya v. Schollenbarger, 465 F.3d 444, 455 (10th Cir. 2006)). The reviewing court is "limited to assessing the legal sufficiency of the allegations

contained within the four corners of the complaint." Id. (citing Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir. 1995)).

In the amended complaint, Plaintiff emphasizes that because Glanz has not provided a "mental health pod" at the TCJ, he and other inmates are at risk of harm. Even assuming Plaintiff adequately alleges that Glanz committed a constitutional violation by failing to provide a "mental health pod" at the TCJ, Plaintiff has not established that Glanz violated clearly established law. In response to Glanz's motion to dismiss, Plaintiff alleges that:

> [Glanz] is liable under the theory of respondeat superior acting under color of state law and not shielded by qualified immunity . . . [b]ecause the Constitution and state & federal laws protecting the disabled were well established before 2014, and because the sole decision making of overcrowding the Tulsa County Jail is the personal responsibility of Defendant Sheriff Glanz . . . .

(Dkt. # 45 at 4). However, Plaintiff fails to cite any Supreme Court or Tenth Circuit authority providing that a failure to segregate mentally ill inmates violates the Constitution. Thus, Plaintiff has not established that Glanz violated clearly established law. Because it was not clearly established that a failure to segregate mental health inmates violated Plaintiff's constitutional rights, see, e.g., Keith v. DeKalb Cty., Ga., 749 F.3d 1034, 1053 (11th Cir. 2014), Glanz is entitled to qualified immunity on Plaintiff's claim that Glanz has failed to provide a "mental health pod" at the TCJ.

**2. Official capacity – no allegation of official policy or custom**

Claims against a government officer in his official capacity are actually claims against the government entity for which the officer works. Kentucky v. Graham, 473 U.S. 159, 167 (1985). Here, the relevant entity is a county, thereby implicating municipal liability. To establish municipal liability under § 1983, a plaintiff must first identify an official policy or custom of the municipality,

14

whether enacted or maintained by its legislative body or an authorized decisionmaker. Schneider, 717 F.3d at 769-70. "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." Id. at 770. In addition, a plaintiff must show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury. See Brown, 520 U.S. at 403; see also Harris, 489 U.S. at 389. Thus, three (3) elements must be satisfied for municipal liability: (1) official policy or custom, (2) causation, and (3) state of mind. Schneider, 717 F.3d at 769. Under § 1983, a municipality may not be held liable on a theory of respondeat superior. Seamons v. Snow, 206 F.3d 1021, 1029 (10th Cir. 2000) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Instead, the plaintiff must show "that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." Camfield v. City of Oklahoma City, 248 F.3d 1214, 1229 (10th Cir. 2001) (internal quotation marks omitted).

To the extent Plaintiff sues Glanz in his official capacity, the complaint fails to state a claim upon which relief may be granted. As stated above, Plaintiff repeatedly asserts that he has sued Glanz based on the theory of respondeat superior. See Dkt. # 4 at 3; Dkt. # 45 at 4. However, a municipality (in this case, a county official in his official capacity) may not be held liable on a theory of respondeat superior. Seamons, 206 F.3d at 1029. Plaintiff does not identify a policy or custom that was the moving force behind the alleged constitutional violations in Counts I, II, and III. As a result, the complaint is insufficient to state a claim as to municipal liability as to those counts. Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993); Myers v. Okla. Cnty. Bd. of

Cnty. Comm'rs, 151 F.3d 1313, 1317 (10th Cir.1998) ("A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation.").

As to Count IV, Plaintiff again fails to identify a formally promulgated policy. However, to the extent Plaintiff alleges the existence of a policy governing housing or cell assignments or that the county's policy is not to provide a "mental health pod,"[7] Plaintiff has not identified any injury he has sustained as a result of those policies.[8] Thus, there are no factual allegations supporting the causation element.

Furthermore, to the extent Plaintiff claims that a county policy providing for no mental health training for detention officers was the driving force behind the alleged excessive use of force, the amended complaint fails to state a claim. "Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the deliberate indifference – necessary to trigger municipal liability." Connick, 131 S. Ct. at 1359 (internal quotation marks and citation omitted). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause

---

[7]In April 2014, Tulsa County voters approved a sales tax for the purpose of building a mental health unit at the TCJ. The Tulsa World newspaper reports that the jail addition is scheduled to open in 2016. See http://www.tulsaworld.com/news/health/oklahoma-watch-jails-becoming-mental-health-facilities-in-oklahoma/article_2a6f3623-d6d0-5477-ac5e-10c7fa9f55c4.html.

[8]As noted herein, Plaintiff identifies injuries sustained by others at the hands of inmates described by Plaintiff as mentally ill. However, Plaintiff has not identified any injury he suffered as a result of his cell assignments.

violations of constitutional rights." Id.; see also Porro v. Barnes, 624 F.3d 1322, 1328 (10th Cir. 2010); Lopez v. LeMaster, 172 F.3d 756, 760 (10th Cir. 1999). Here, Plaintiff does not cite to other incidents of mentally ill detainees being subjected to excessive force while being booked-in to the jail. Nor do any of Plaintiff's allegations concerning treatment received by other inmates involve unnecessarily excessive force by jailers. Thus, there are no factual allegations supporting the state of mind element. Plaintiff's allegations are insufficient to suggest that any official policy or custom was both deliberately indifferent to his constitutional rights and the moving force behind his injury, see Harris, 489 U.S. at 385. Therefore, to the extent Plaintiff has sued Glanz in his official capacity, the claims raised in the amended complaint fail to state a claim upon which relief may be granted. Glanz's motion to dismiss shall be granted as to any claim asserted against him in his official capacity.

**D. Defendants Mendenhall and DuBoise shall file motions for summary judgment**

As stated above, Defendants Mendenhall and DuBoise have filed answers (Dkt. ## 32, 33). Defendants Mendenhall and DuBoise shall file a motion for summary judgment with regard to Plaintiff's allegations against them as asserted in the amended complaint. Plaintiff shall file a response within 21 days from the date the motion is filed. Failure to file a response authorizes the Court, in its discretion and upon notice to Plaintiff, to deem the motion confessed. See LCvR7.2(f). Defendants may file a reply within 14 days after the due date of the response.

**E. Unserved defendants**

Under Fed. R. Civ. P. 4(m), a defendant must be served within 120 days of the filing of the complaint unless the Court orders that service be made within a specified time. The Court may extend the time for service if the plaintiff shows good cause for the failure. See Fed. R. Civ. P. 4(m).

17

The record reflects that, on January 8, 2015, unexecuted returns of service were filed for Defendants Deputy Robertson and D.O. Roberson (Dkt. ## 26, 27). In the "remarks" section of the forms, the U.S. Marshal wrote "on 1/8/15, said employee is unknown" (Dkt. # 26), and "as of 1/8/15, this employee is unknown" (Dkt. # 27).[9] Thus, those defendants have not been served and the time has expired. However, on February 13, 2015, Plaintiff filed a "notification" (Dkt. # 47) addressing the lack of service on the two defendants. Should Plaintiff wish to make a second attempt at service, Plaintiff will be required to complete and submit another summons and USM-285 service form for each unserved defendant. Once Plaintiff submits the necessary forms, the Court will enter a second order with regard to service. Should Plaintiff fail to submit additional service forms within fourteen (14) days of the entry of this Order, Defendants Roberson and Robertson will be dismissed without prejudice.

**ACCORDINGLY, IT IS HEREBY ORDERED that**:

1. The Clerk shall modify the record to change Defendant DeBoise's name to "Deputy Dustin DuBoise, Grievance Coordinator."

2. The Clerk shall modify the record to change Defendant Mendehall's name to "Sgt. Ernest Mendenhall."

3. Plaintiff's motion to correct "clerical error" (Dkt. # 58) is **declared moot**.

4. Defendant Glanz's motion to dismiss (Dkt. # 38) is **granted**. Defendant Glanz is dismissed from this action without prejudice.

---

[9] The Special Report prepared for this case and filed of record on March 9, 2015, contains statements attributed to "D.O. Clifford Roberson" and "Deputy Trent Robinson." See Dkt. # 50-1 at 6. Based on the Special Report, it appears that Defendant D.O. Roberson is not "unknown" as represented on the unexecuted return of service. Additionally, it appears the correct name for "unknown" Defendant Deputy Robertson may be Deputy Trent Robinson.

18

5. Within thirty (30) days of the entry of this Order, Defendants Mendenhall and DuBoise shall file a motion for summary judgment with regard to Plaintiff's allegations against them as asserted in the amended complaint.

6. Plaintiff shall file a response within 21 days from the date the motion is filed. Failure to file a response authorizes the Court, in its discretion and upon notice to Plaintiff, to deem the motion confessed. **See** **LCvR7.2(f)**.

7. Defendants may file a reply within 14 days after the due date of the response.

8. Should Plaintiff wish to make a second attempt to serve Defendants Roberson and Robertson, he shall complete and submit one (1) summons and one (1) USM-285 Marshal service form for each defendant.

9. The Clerk of Court shall send Plaintiff two (2) blank summonses and two (2) blank USM-285 Marshal service forms, all identified as Case No. 14-CV-511-GKF-PJC.

10. Should Plaintiff fail to submit additional service forms within fourteen (14) days of the entry of this Order, Defendants Roberson and Robertson will be dismissed without prejudice.

**DATED** this 6th day of August, 2015.

*[signature]*
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT