## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **FRANKLIN C. SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-CV-511-GKF-PJC** |
| | ) | |
| **DEPUTY DUSTIN DuBOISE,** | ) | |
| **Grievance Coordinator; et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

This is a 42 U.S.C. § 1983 civil rights action.  Plaintiff is a prisoner and appears pro se.  In his amended complaint (Dkt. # 4), Plaintiff alleges that he was subjected to excessive force while being booked-in at the Tulsa County Jail (TCJ), that Defendant DuBoise fabricated the result of an investigation, that he has been harassed while at TCJ, and that he has been housed under conditions subjecting him to "imminent danger."  Officials at TCJ prepared and filed a Special Report (Dkt. ## 49, 50, 52).  By Opinion and Order entered August 6, 2015 (Dkt. # 74), the Court granted the motion to dismiss filed by Defendant Glanz and directed Defendants Mendenhall and DuBoise to file a motion for summary judgment.

On September 24, 2015, Defendants Mendenhall and DuBoise filed a "motion to dismiss or alternatively motion for summary judgment and brief in support" (Dkt. # 95).  Plaintiff filed a response (Dkt. # 103) to the motion.  Plaintiff has also filed the following motions:  to amend (Dkt. ## 75, 104), "to recuse and change of venue" (Dkt. # 77), "to reclaim Sheriff Stanley Glanz as defendant with leave to amend to conform to the evidence and to alter or amend a judgment pursuant to Rule 15(b),(d), 59(e)" (Dkt. # 78), "for extension [of] time and invoking the imminent danger

status at the Tulsa County Jail and requesting a preliminary injunction and representative pursuant to Rules 17(c), 25(b), and 65(3)(d), & 65(3), protection for incompetent person" (Dkt. # 101), and "to compel representative to protect incompetent person pursuant to Rule 17(2)" (Dkt. # 105). Defendants DuBoise and Mendenhall filed a motion to strike Plaintiff's most recent motion to amend (Dkt. # 106). Plaintiff filed a response (Dkt. # 108) to the motion to strike.

Plaintiff also filed a "written notification" (Dkt. # 111), requesting that the Court send him a copy of the DVD (Dkt. # 52), filed as Exhibit 8 to the Special Report. By Order filed November 30, 2015 (Dkt. # 113), the Court granted Plaintiff's request to be provided a copy of the DVD and directed counsel for Defendants to send a copy of the DVD to Plaintiff. On December 16, 2015, Plaintiff filed a supplemental response to the motion for summary judgment, acknowledging receipt of and addressing the DVD. See Dkt. # 117.

For the reasons discussed below, Defendants' motion for summary judgment shall be granted as to Counts I and II and their motion to dismiss shall be granted as to Count III. Plaintiff's pending motions shall be denied and Defendants' motion to strike shall be declared moot. Based on the rulings herein, the Court finds it unnecessary to serve the amended complaint on the previously unserved defendants.

## BACKGROUND

The Court previously summarized the claims set forth in Plaintiff's amended complaint. See Dkt. # 74. In the "Nature of Case" section of the amended complaint, Plaintiff writes:

> Defendants (Sgt. Mendehall [sic] & Deputy Robertson) twisted plaintiff's left arm behind his back when force wasn't needed, tearing the tendons and dislocating the rotary cup [sic] in his left shoulder, throwing him in a holding cell (barefooted) while cold air blew on him causing near death experiences, with the toilet overflowed with feces as gnats flew on the feces then back on to plaintiff's head,

2

neck and lips breaking out in bloody soars [sic] on those spots, along with catching vitaminoses [sic] of the feet.

(Dkt. # 4 at 2).  Based on those and other factual allegations, found on handwritten pages included with the amended complaint, Plaintiff identifies four (4) causes of action, as follows:

Count I:    Plaintiff was deprived of his guarantee protection under our Fourteenth Amendment by using force and imposing punishment when force nor punishment was needed causing serious physical injuries, placing him in harms way while still a pretrial detainee, as well as violating the (ADA).

Count II:   Plaintiff submitted a grievance regarding the deputies' misuse & abuse of power under color of state law; whereas, deputy DeBoise [sic] falsely fabricated his report impairing the integrity of the investigation in order to avoid a possible federal offense or federal lawsuit by lying that the plaintiff was combative in his report on (August 8th, 2014), however, the plaintiff wasn't charged with a battery upon a law enforcement official nor written up to support his claim depriving plaintiff of his due process seeking a legitimate remedy.  14 Amend.

Count III:  Deputy Roberson violated Title: (18 U.S.C.A. § 1512) by harassing the plaintiff who is both a witness & victim in the complaint against the two deputies and deputy DeBoise [sic] depriving due process by corruptly obstructing the official proceeding.

Count IV:   Defendant Sheriff Stanley Glanz deprived plaintiff equal protection of the laws by abridging the privileges & immunities under our Fourteenth Amendment of our United States Constitution, disregarding greater state, federal, and constitutional rights by wrongfully mixing the plaintiff (who falls under the Americans with Disabilities Act) with psychologically normal inmates constituting imminent danger.  And if he didn't know he should of known (see Harlow v. Fitzgerald).

(Id. at 2, 4, 6).  In his request for relief, Plaintiff states that:

Plaintiff's left arm at the shoulder pops in & out of place with the slightest move causing excruciating sharp pain with no medical assistance because Deputy DeBoise's [sic] wife works in medical at (TCJ) constituting a deliberate indifference to a serious medical need; therefore, plaintiff requests $500,000 for physical damages & $200,000 for punitive damages.

3

(Id. at 6).  As stated above, the Court previously found that Count IV of the amended complaint failed to state a claim against Defendant Glanz.  See Dkt. # 74 at 8-17.  The Court further found that Plaintiff failed to allege facts demonstrating personal participation by Defendant Glanz as to Counts I, II, and III of the amended complaint.  Id. at 6-8.  As a result of the previous ruling, the only claims remaining before the Court are Counts I, II, and III.

## *ANALYSIS*

### A.  Dismissal standards

To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff.  Id. at 555.  However, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed.  Id. at 558.  Twombly articulated the pleading standard for all civil actions.  See Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009).

A pro se plaintiff's complaint must be broadly construed under this standard.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972).  The generous construction to be given the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the

pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." Id. A reviewing court need not accept "mere conclusions characterizing pleaded facts." Bryson v. City of Edmond, 905 F.2d 1386, 1390 (10th Cir. 1990); see also Twombly, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (quotations and citations omitted)). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

## B. Summary judgment standards

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996) (quoting Wolf v. Prudential Ins. Co. of America, 50 F.3d 793, 796 (10th Cir. 1995)).  "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994).

**C.  Defendants' "motion to dismiss or alternatively motion for summary judgment"**

Applying the standards discussed above to the record and Plaintiff's claims and arguments, the Court finds Defendants' motion for summary judgment shall be granted as to Counts I and II and their motion to dismiss shall be granted as to Count III.

**1.  Use of force/conditions in holding cell (Count I)**

**a.  Excessive use of force claim**

In Count I of the amended complaint, Plaintiff alleges that, on August 3, 2014, Defendants Mendenhall and Robertson used excessive force while he was being booked-in to the TCJ.  See Dkt. # 4.  Specifically, Plaintiff claims that Defendants Mendenhall and Robertson twisted his left arm behind his back, "tearing the tendons and arm out of socket, throwing him in a cold cell (barefooted), where the toilet was overflowed with feces."  Id. at 2.  Because the incident giving rise to Plaintiff's excessive use of force claim occurred while he was being booked-in to the TCJ, his claim is governed by the due process clause of the Fourteenth Amendment.   Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015).

In Kingsley, the Supreme Court held that "[i]n deciding whether the force deliberately used is, constitutionally speaking, 'excessive,' . . . courts must use an objective standard."  Id. at 2472-73. To meet that standard, "a pretrial detainee must show only that the force purposely or knowingly

used against him was objectively unreasonable." Id. at 2473.  Citing Graham v. Connor, 490 U.S.

386, 396 (1989), the Court explained that:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Kingsley, 135 S. Ct. at 2473.  The Court further explained that "[a] court must make this

determination from the perspective of a reasonable officer on the scene, including what the officer

knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396).  In

addition,

> A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security."

Id. (quoting Bell v. Wolfish, 441 U.S. 520, 540 (1979)).

Defendants provide evidence demonstrating that Defendant Mendenhall was not on duty at

the time of the alleged incident.[1] See Dkt. # 95-2.  In response to the motion, Plaintiff does not

controvert Defendants' evidence but instead argues that, even if Defendant Mendenhall did not

personally participate in the incident, he should nonetheless be liable based on his position as a

supervisor. See Dkt. # 103 at 3.  The Court rejects Plaintiff's argument.  Personal participation is

an essential element of a § 1983 claim. Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976);

see also Garrett v. Stratman, 254 F.3d 946, 950 n.4 (10th Cir. 2001) (noting that medical official

---

[1]In the Special Report (Dkt. # 50-1), the jail officials involved in the incident are identified as Corporal (Cpl.) Dennis Miller and Detention Officer (D.O.) Nathan Cantrell.

must have "played a role in the challenged conduct" to be liable for an Eighth Amendment violation).  As a result, government officials have no vicarious liability in a section § 1983 suit for the misconduct of their subordinates because "there is no concept of strict supervisor liability under section 1983."  Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996) (quotation omitted).  Instead, a supervisor is liable only if he is "personally involved in the constitutional violation and a sufficient causal connection . . . exist[s] between the supervisor and the constitutional violation."  Serna v. Colo. Dep't of Corrs., 455 F.3d 1146, 1151 (10th Cir. 2006) (quotation omitted); see also Schneider v. Grand Junction Police Dep't, 717 F.3d 760, 767 (10th Cir. 2013) (requiring a plaintiff to show an "affirmative link" between the supervisor and the constitutional violation). In the absence of evidence demonstrating that Defendant Mendenhall personally participated in the incident, the Court finds that Defendant Mendenhall is entitled to judgment as a matter of law.

Furthermore, Plaintiff fails to controvert Defendants' summary judgment evidence refuting his claim that he was subjected to an excessive use of force.  The Intake Screening Form, provided as part of Plaintiff's booking record, reflects that Plaintiff appeared to be under the influence of alcohol during booking.  (Dkt. # 49-3 at 21).  That record also contains a "Patient Note" stating that Plaintiff had been placed in a holding cell "for aggressiveness," and that, while in the holding cell, Plaintiff rested and "no distress" was noted.  Id. at 26.  Defendants also provide the security camera footage (Dkt. # 52 (Special Report, Ex. 8)) of the time before, during, and after the incident giving rise to Plaintiff's claim.  The camera footage is comprised of six (6) clips: Clip 1, from the "132 Prebook West" camera, begins at 10:13:09 p.m. and ends at 10:32:32 p.m., on August 3, 2014; Clip 2, from the "Booking Sallyport Interior" camera, begins at 10:34:44 p.m. and ends at 10:35:34 p.m., on August 3, 2014; Clip 3, from the "Holding Vestibule" camera, begins at 10:36:02 p.m. and ends

8

at 10:36:27 p.m., on August 3, 2014; Clip 4, from the "Booking Holding" camera, begins at 10:36:07 p.m., on August 3, 2014, and ends at 5:00:27 a.m., on August 4, 2014; Clip 5, from the "Holding Vestibule" camera, begins at 5:00:17 a.m. and ends at 5:00:50 a.m., on August 4, 2014; and Clip 6, from the "Booking Desk" camera, begins at 4:59:26 a.m. and ends at 5:01:45 a.m., on August 4, 2014. The video clips have no audio.

As stated above, Plaintiff has been provided a copy of the DVD containing the video footage. See Dkt. # 116. In his supplemental response (Dkt. # 117), filed after receiving the DVD, Plaintiff first argues that:

> [T]wo critical portions of the video were withheld, the part where Plaintiff was in the vestibule with D.O. Cantrell where he became irate and was screaming at the Plaintiff causing complete confusion, and the portion from where Cpl. Dennis Miller & D.O. Cantrell both had a grip on Plaintiff's left arm at the front row chairs to the holding cell is missing.

Id. at 5. As to Plaintiff's allegation regarding missing video from the vestibule, Clip 1, from the "132 Prebook West" camera, ends at 10:32:32 p.m. See Dkt. # 52. Clip 2, from the "Booking Sallyport Interior" camera, begins at 10:34:44 p.m. Id. Thus, there is a time gap of approximately two (2) minutes. As to Plaintiff's allegation regarding missing video from the area at the front row of chairs, Clip 2, from the "Booking Sallyport Interior" camera, shows Plaintiff being escorted out of booking at 10:35:27 p.m. Clip 3, from the "Holding Vestibule" camera, begins at 10:36:02 p.m. Thus, there is a time gap of approximately thirty-five (35) seconds. However, Plaintiff's allegation that "portions of the video were withheld" is entirely speculative. A more likely explanation is that there is no camera in either the vestibule outside the "Booking Sallyport Interior" or in the area between the "Booking Sallyport Interior" and the "Holding Vestibule." The Court also notes that when Plaintiff entered the vestibule at the end of Clip 1, he is handcuffed. When he exits the

vestibule at the beginning of Clip 2, he is not handcuffed.  Thus, during the missing two minutes, the jail officials had to remove Plaintiff's handcuffs.  In addition, even if D.O Cantrell "was screaming" at Plaintiff in the vestibule, nothing in the two video clips supports Plaintiff's allegation that there was "complete confusion" at any point during the incident.  With regard to the 35 seconds of "missing" video, Clip 2 ends as Plaintiff is being escorted from the booking area, with Cpl. Miller holding Plaintiff's left arm and D.O. Cantrell holding Plaintiff's right arm.  Clip 3 begins as Plaintiff is being escorted into the holding cell, with Cpl. Miller holding Plaintiff's left arm and D.O. Cantrell holding his right arm.  Plaintiff's  entry into the holding cell is unremarkable.  There appears to be no change in Plaintiff's demeanor.  He does not appear to be agitated or in pain.  In fact, Plaintiff appears to be more upright as he enters the holding cell than he was as he exited the booking area.

Plaintiff further argues that, despite the missing portions, the video clips "captured the most shocking segment of where the plaintiff sustained his serious injury to his left shoulder by Cpl. Miller and D.O. Cantrell."  (Dkt. # 117 at 5).  Plaintiff alleges that the video clips demonstrate the following:

> [W]hen Plaintiff entered the vestibule with D.O. Cantrell, he started yelling.  This is when Plaintiff started losing consciousness and everything became foggy, so when he exited the vestibule, Plaintiff inadvertently [sic] but innocently turned left, accidently missing the metal detector which was grossly misperceived as being uncooperative behavior or insensitivity to Plaintiff's disabilities.
>
> Plaintiff was then grabbed and twisted around by Cantrell and pushed through the metal detector making Plaintiff dizzy causing an unsteady gait, contributed with mental deterioration, as well as mental & physical fatigue.
>
> Then without warning or contacting medical per CLEET, TCSO, and (ADA) requirements to determine Plaintiff's mental & physical state or condition, Cpl. Miller spitefully, wantonly with a willful bad intent to cause injury, regardless of the consequences, rushed up and grabbed Plaintiff's left arm and began twisting it, pushing him forward as Plaintiff screamed to stop because his tendons were tearing.
>
> Plaintiff then discovered from reviewing the DVD video while both Cpl. Miller and D.O. Cantrell had a hold of Plaintiff's left arm behind his back at the front row chairs[,] Cpl. Miller was adjusting his grip around Plaintiff's left arm and at the

10

same time he made a derogatory statement into the Plaintiff's left ear, he maliciously and sadistically with a great thrust, jerked Plaintiff's left arm up as far as it would go behind his back, forcing Plaintiff's upper body to lunge forward. And the more Plaintiff screamed in excruciating pain, the more Cpl. Miller kept pushing Plaintiff's left arm up behind his back until he reached the holding cell.

Id. at 5-6.

Contrary to Plaintiff's allegations, the video clips do not show that either Cpl. Miller or D.O. Cantrell unnecessarily "grabbed and twisted" Plaintiff or his left arm or unnecessarily "pushed" Plaintiff. Instead, Clip 2 shows that Plaintiff appeared to be unsteady on his feet, a symptom of intoxication, and that he failed to cooperate with the officers.[2] Id. Specifically, the video shows that, after Plaintiff made a darting motion in an attempt to bypass a metal detector, D.O. Cantrell used minimal force to direct Plaintiff through the metal detector safely. Similarly, after Plaintiff failed to comply with the officers' instructions and refused to move to the appropriate chair, Cpl. Miller and D.O. Cantrell used only the force necessary to place Plaintiff into "escort position."[3] The officers then directed Plaintiff into a holding cell without further incident. Id. The video clips demonstrate that the force used by the officials was minimal and did not exceed the amount necessary to bring Plaintiff into compliance and to insure the safety of both Plaintiff and the officers.

---

[2]While Plaintiff placed his hand against the officer's chest in resistance as the officer lifted him from a chair, Plaintiff does not appear to have been "combative" during the incident. Plaintiff was, however, non-cooperative and resisted the officers' efforts to enforce the facility's rules.

[3]Defendants explain that the "escort position" is a technique "that is taught at [the Tulsa County Sheriff's Office] in custody and control classes, and is used numerous times every day by those working in the jail." See Dkt. # 50-1 at 6. Defendants further state that the escort technique is also taught at Council on Law Enforcement Education and Training (CLEET) courses "for all certified law enforcement officers in the state of Oklahoma." Id.

Furthermore, the summary judgment record for the period of time immediately after the incident controverts Plaintiff's claim that the force used by the officers caused tearing of tendons in his shoulder.  After being placed in the holding cell, Clip 4 shows Plaintiff initially rubbing his left arm.  See Dkt. # 52.  However, the rubbing soon ceased and Plaintiff was able to raise his hands above his head and move both of his arms without restriction.  See id.  He does not appear to be in pain.  Id.  He was able to sleep undisturbed from 12:45 a.m. to 4:50 a.m., and he left the holding cell without incident at approximately 5:00 a.m.  Id.  The jail nurse who observed Plaintiff in the holding cell noted "no distress" and that Plaintiff was resting.  See Dkt. # 49-3 at 26.  LPN Mobley examined Plaintiff on August 4, 2015 at 5:20 a.m., or twenty minutes after he left the holding cell.  (Dkt. # 49-4 at 1).  No visible signs of serious injury were noted at that time and his ease of movement was categorized as "unremarkable."  Id.  Thus, the records compiled at the time of the incident simply do not support Plaintiff's allegation that he suffered "torn tendons" and "arm out of socket," see Dkt. # 4 at 2, as a result of the minimal use of force by officers at the jail.[4]

---

[4]Two days after the incident, on August 6, 2014, a jail nurse conducted a muscular skeletal exam based on Plaintiff's complaint of pain in his left shoulder.  See Dkt. # 49-4 at 9.  The nurse noted Plaintiff's statement that an officer grabbed his left arm and twisted it behind his back.  Id.  The nurse recorded that Plaintiff's pain level was "moderate," but that he was "able to function okay."  Id. at 9-10.  He was given ibuprofen for pain management.  Id.  Thereafter, Plaintiff was seen three (3) more times by TCJ nurses, on August 18, 2014, September 24, 2014, and October 7, 2014, because of pain in his left shoulder.  Each time, the pain level was described as "moderate" or "mild" and he was prescribed ibuprofen.  Id. at 13, 23-24, 27-28.  More than one year later, on November 23, 2015, Plaintiff supplemented his response to Defendants' motion for summary judgment with a report of findings from an MRI of Plaintiff's left shoulder, dated September 9, 2015, provided to Sonall Ghosh, MD, and signed by Steven McCormack, MD.  (Dkt. # 112 at 3).  The report confirms that Plaintiff has a torn tendon and other degenerative changes, including "advanced osteoarthritic changes," in his left shoulder.  Id.  Other than citing a "remote history of injury," id., the report is silent as to how and when any injury to Plaintiff's shoulder may have occurred.  The report does not provide insight as to whether the damage is attributable to trauma or degenerative changes resulting from aging and life style. The Court notes that since the August 3, 2014, incident at the TCJ, Plaintiff has also been in custody at the Payne County Jail and the Rogers

In summary, considering Plaintiff's lack of cooperation and the lack of contemporaneous evidence of serious injury, the Court concludes the movants have shown that the amount of force used was objectively reasonable under the circumstances and that there is no genuine dispute as to any material fact with regard to Plaintiff's claim of excessive use of force.  The motion for summary judgment shall be granted as to the excessive use of force claim raised in Count I.

The Court further finds that any jail official involved in the incident would be entitled to summary judgment.  As a result, Plaintiff's requests to file an amended complaint to add  D.O. Cantrell and Cpl. Miller as defendants shall be denied as futile.  E.spire Commc'ns, Inc. v. N.M. Pub. Regulation Comm'n, 392 F.3d 1204, 1211 (10th Cir. 2004) ("A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment.").  For the same reason, the Court finds it would be futile to serve Defendant Robertson[5] and he shall be dismissed without prejudice from this action.

### b.  Claim challenging the conditions in the holding cell

To the extent Plaintiff raises a separate claim challenging the conditions of the holding cell, the claim fails.  Although the Fourteenth Amendment governs this claim due to Plaintiff's status as a pretrial detainee, the standards are the same as those under the Eighth Amendment.  "In an Eighth Amendment conditions of confinement claim, a plaintiff must show an objective and subjective

---

County Jail.  In addition, he has been out of custody and homeless.

[5]As discussed in the prior Opinion and Order, the U.S. Marshal filed unexecuted returns of service for Defendants Robertson and Roberson.  See Dkt. # 74 at 18.  Although the Court stated that service would again be ordered for Defendants Robertson and Roberson if Plaintiff provided new service documents, see id. at 18-19, the Court finds that, in light of the uncontroverted summary judgment record, it is unnecessary to serve Defendants Robertson and Roberson.

13

component. 'First, the deprivation alleged must be, objectively, sufficiently serious.' Second, the prison official's 'state of mind must be one of deliberate indifference to inmate health or safety.'" Skelton v. Bruce, 409 F. App'x 199, 202 (10th Cir. 2010) (unpublished)[6] (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). The conditions in an isolation cell are meant to insure the inmate's safety and may not be comfortable. Of course, this does not mean that Plaintiff can be denied "the minimal civilized measure of life's necessities." Wilson v. Seiter, 501 U.S. 294, 298 (1991). "In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration." DeSpain v. Uphoff, 264 F.3d 965, 974 (10th Cir. 2001) (internal quotation marks omitted).

As stated above, Plaintiff alleges that he was "throw[n] in a holding cell (barefooted) while cold air blew on him causing near death experiences, with the toilet overflowed with feces as gnats flew on the feces then back on to plaintiff's head, neck and lips breaking out in bloody soars [sic] on those spots, along with catching vitaminoses of the feet." (Dkt. # 4 at 2). However, the uncontroverted summary judgment record refutes Plaintiff's allegations. The video from the holding cell (Dkt. # 52) shows that the officers simply directed Plaintiff into the holding cell. He was not "thrown" into the cell. In addition, Plaintiff was wearing socks and the floor of the holding cell was clean and dry. Nothing in the video suggests that the toilet was overflowing and clogged with feces. Id. The video also shows that Plaintiff occupied the holding cell for a relatively short time, from

---

[6]This and all other unpublished opinions herein are not precedential but are cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

approximately 10:35 p.m. on August 3, 2014, until 5:00 a.m., on August 4, 2014, or for 6.5 hours. Because it was August in Oklahoma, the source of any "cold air" in the cell was air conditioning. As stated above, Plaintiff was able to sleep undisturbed from 12:45 a.m. to 4:50 a.m., and he left the holding cell without incident at approximately 5:00 a.m.  Id.  Thus, neither the temperature in the cell nor any other physical condition prevented Plaintiff from sleeping.  Also, Plaintiff's medical records belie his claim that conditions in the holding cell caused him to break out in bloody sores and to develop problems with his feet.  LPN Mobley examined Plaintiff on August 4, 2015 at 5:20 a.m., or twenty minutes after he left the holding cell.  (Dkt. # 49-4 at 1).  No visible signs of serious injury were noted at that time, and Plaintiff's skin was "[f]ree of lesions, open sores, serious rashes." Id. at 1, 2.  On August 18, 2014, or approximately two weeks after arriving at the jail, RN Whitener examined Plaintiff and noted no "skin lesion, 'spider bites,' rashes, or infections," and described Plaintiff's "skin (color, turgor, free of rash, lesions, infestations)" as "unremarkable."  Id. at 11, 12.

The Court finds that the summary judgment evidence on file shows that there is no genuine dispute as to any material fact with regard to Plaintiff's claim challenging the conditions in the holding cell.  The motion for summary judgment shall be granted as to the holding cell conditions claim raised in Count I.

### 2.  Fabricated report (Count II)

In Count II, Plaintiff alleges that Defendant DuBoise "fabricated his report impairing the integrity of the investigation in order to avoid a possible federal offense or federal lawsuit by lying that the plaintiff was combative in his report on August 8th, 2014."  See Dkt. # 4 at 2.  Plaintiff explains that he submitted a grievance regarding the use of force incident and that Defendant

DuBoise prepared a response falsely describing Plaintiff as "combative," thereby depriving Plaintiff of due process.  Id.

In support of the motion to dismiss or in the alternative motion for summary judgment, Defendants provide the Affidavit of Dustin DuBoise (Dkt. # 95-3).  Defendant DuBoise states that he "was not responsible for investigating Mr. Smith's grievance," and had no "role in the investigation of Mr. Smith['s] grievance, or the preparation of the response to Mr. Smith's grievance."  Id. at ¶ 4.  Defendant DuBoise explains that he was a detention officer at the time and that, as a result, he did not have the authority to prepare a written response to an inmate grievance.  Id. at ¶ 5.  In response to Defendants' motion, Plaintiff claims that:

> Plaintiff did indeed offer prima facie proof (documents) that D. DeBoise/Defendant not only conducted the investigation into Plaintiff's grievance, but also, personally came to Pod-J14 where Plaintiff was housed at on August 8th, 2014, to have Plaintiff sign off on it under duress by imprisonment.  Plaintiff did offer proof, because he sent the original copy to this court of DuBoise's signature or at least confirming the DuBoise was concealing the identities of the official who caused serious injuries.

(Dkt. # 103 at 2).

The record compiled in this case contains Plaintiff's grievance concerning the booking incident, provided in support of Plaintiff's original complaint.  See Dkt. # 1 at 6-9.  Although Plaintiff argues that Defendant DuBoise signed the form, the Court finds that neither of the officers' signatures on the form appears to be that of Defendant DuBoise.  First, neither the "Officer's signature" nor the "respondent's signature" on the grievance is legible.  See id. at 6.  Significantly, however, neither signature matches the signature of Defendant Dustin DuBoise as found on the Affidavit of Dustin DuBoise provided in support of the motion to dismiss.  See Dkt. # 95-3 at 2.  Lastly, the responding officer wrote that his or her title is "CPL."  (Dkt. # 1 at 6).  In his affidavit, Defendant DuBoise states that his title at the time of the incident was Detention Officer.  Based on

16

review of the record, the Court finds Plaintiff has failed to controvert the summary judgment record provided by Defendants demonstrating that Defendant DuBoise did not investigate the incident or prepare the grievance response.  Furthermore, even if Defendant DuBoise had some involvement in responding to Plaintiff's grievance, that action does not state a substantive constitutional violation.  Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009).

For the reasons discussed above, the Court finds that the summary judgment evidence on file shows that there is no genuine dispute as to any material fact with regard to Plaintiff's Count II claim.  Defendant DuBoise is entitled to judgment as a matter of law.  In addition, because the preparation of a grievance response does not implicate a constitutional violation, it would be futile to allow Plaintiff to file an amended complaint to name the officer(s) who investigated and prepared the response to Plaintiff's grievance.  E.spire Commc'ns, Inc., 392 F.3d at 1211.

### 3.  Harassment and obstruction of investigation (Count III)

In Count III, Plaintiff alleges that Deputy Roberson harassed Plaintiff and obstructed "the official proceeding."  Id. at 6.  Plaintiff states that, after he "detected DeBoise [sic] impaired the integrity of the investigation on Aug. 8th, 2014, he filed a complaint to investigation at TCJ on Aug. 9th, 2014.  Then on or about Aug. 12th, 2014, Deputy Roberson started harassing & intimidating the plaintiff.  [S]upports a strong inference due to the timing of the complaints he attempted to impede due process of law."  Id.

Plaintiff's factual allegations supporting Count III are vague and conclusory.  He provides only a general description of Defendant Roberson's conduct and fails to identify how the alleged conduct impeded his ability to pursue any claim.  The only discernible alleged deprivation appears to be Plaintiff's ability to pursue an administrative remedy via the grievance process.  That process

implicates no constitutional right.  See Boyd v. Werholtz, 443 F. App'x 331, 332 (10th Cir. 2011) (unpublished) ("[T]here is no independent constitutional right to state administrative grievance procedures.").

Furthermore, "[w]hen the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." Id. (internal quotation omitted).  In Count III, Plaintiff does not allege that he has been denied access to the courts and Plaintiff's numerous filings in this action belie such a claim.[7]  Plaintiff makes no showing of other actual injury.  See Fogle v. Gonzales, 570 F. App'x 795, 797 (10th Cir. 2014) (unpublished) (allegation that plaintiff was denied prisoner grievance form because he had sued the defendant "in no way prevented or hindered [the prisoner] from bringing suit in court" and, therefore, "his access-to-the-courts claim indisputably lack[ed] merit"); Gee v. Pacheco, 627 F.3d 1178, 1189 (10th Cir. 2010) (explaining that a claim of retaliation requires a plaintiff to show (1) that he was engaged in constitutionally protected activity, (2) that the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) that the adverse action was substantially motivated as a response to his protected conduct).  Because Plaintiff fails to identify any injury or allege that he has been unable to continue filing grievances or file a civil complaint against Defendant Roberson, Count III of the

---

[7]The Court also notes that Plaintiff has provided copies of grievances and inmate request forms submitted to TCJ officials during the pendency of this action.  See Dkt. ## 77 at 14-15, 78 at 31-32, 86 at 2-3, 94 at 9-10, 105 at 12-13; Dkt. # 109 at 2-5.  In addition, he received responses from TCJ Chief Deputy Michelle Robinette, explaining why he was placed in restrictive housing and acknowledging an error in the handling of some outgoing legal mail.  See Dkt. # 94 at 11-12.  Those documents support the conclusion that Plaintiff has been able to access the grievance procedure at TCJ and has suffered no injury as a result of the allegations in Count III.

amended complaint fails to state a claim upon which relief may be granted.  Therefore, Defendants' motion to dismiss shall be granted as to Count III.  The Court further finds it would be futile to serve Defendant Roberson, as previously ordered, see Dkt. # 74 at 17-19, and he shall be dismissed without prejudice from this action.  E.spire Commc'ns, Inc., 392 F.3d at 1211.

## D.  Plaintiff's motions

As stated above, Plaintiff has filed the following motions:  to amend (Dkt. ## 75, 104), "to recuse and change of venue" (Dkt. # 77), "to reclaim Sheriff Stanley Glanz as defendant with leave to amend to conform to the evidence and to alter or amend a judgment pursuant to Rule 15(b),(d), 59(e)" (Dkt. # 78), "for extension [of] time and invoking the imminent danger status at the Tulsa County Jail and requesting a preliminary injunction and representative pursuant to Rules 17(c), 25(b), and 65(3)(d), & 65(3), protection for incompetent person" (Dkt. # 101), and "to compel representative to protect incompetent person pursuant to Rule 17(2)" (Dkt. # 105).  As discussed below, Plaintiff's motions are denied.

### 1.  Motions to amend/motion to strike

In his motions to amend (Dkt. ## 75, 104),[8] Plaintiff states that it is "irrefutable," based on the Special Report, that the two officials involved in the alleged use of excessive force were "Cpl. Miller and D.O. Cantrell."  However, the Court has determined above that, upon review of the video clips provided as part of the Special Report, the force used by the officials was minimal and did not exceed the amount necessary to insure the safety of both Plaintiff and the officers and bring Plaintiff

---

[8]Although the second motion to amend includes attachments, see Dkt. # 104, and the first motion includes two pages with only Plaintiff's name, his cell number, and numbers appearing to reflect copy requests, the two motions are both dated August 18, 2015, and are otherwise identical.

into compliance.  Nothing in the video clips suggests that the officers acted with malice or with unwise, excessive zeal amounting to an abuse of official power. Therefore, it would be futile to allow Plaintiff to amend his complaint to add "Cpl. Miller and D.O. Cantrell" as defendants. Plaintiff's motions to amend shall be denied.  Defendants' motion to strike Plaintiff's motion to amend shall be declared moot.

## 2.  Motion to recuse and change venue

Plaintiff alleges that the prior dismissal of Defendant Glanz was a "biased ruling" and demonstrates the existence of a conflict of interest.  See Dkt. # 77 at 5.  He also alleges that the Court's order dismissing Defendant Glanz was "back dated" and that the ruling was entered "hastily."  Id. at 6.  Plaintiff threatens to "seek damages against this Court" and, for that reason, he argues that the undersigned should recuse and "grant a change of venue to Oklahoma City."  Id. at 7.  Plaintiff also identifies Denver, Colorado, or Washington, D.C., as options for a change of venue. Id.

Plaintiff's requests shall be denied.  First, nothing suggests that venue is improper in this district.  Second, as Plaintiff was previously advised, see Dkt. # 11 at 8, disqualification must be predicated "upon extrajudicial conduct rather than on judicial conduct." Green v. Branson, 108 F.3d 1296, 1305 (10th Cir. 1997).  While Plaintiff clearly disagrees with the Court's rulings entered in this case, those rulings constitute judicial conduct and do not support Plaintiff's request for recusal. For those reasons, Plaintiff's motion to recuse and change venue shall be denied.

## 3.  Motion to reconsider dismissal of Defendant Glanz

In his motion "to reclaim Sheriff Stanley Glanz as defendant with leave to amend to conform to the evidence and to alter or amend a judgment pursuant to Rule 15(b),(d), 59(e)" (Dkt. # 78),

Plaintiff asks the Court to reconsider its ruling dismissing Defendant Glanz from this action. Whether to grant or deny a motion for reconsideration is committed to the Court's discretion.  Price v. Philpot, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) (reviewing denial of motion for reconsideration for abuse of discretion); Hancock v. Oklahoma City, 857 F.2d 1394, 1395 (10th Cir. 1988). "A district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling." Nova Health Sys. v. Edmondson, 460 F.3d 1295, 1299 (10th Cir. 2006) (internal quotations omitted).

Upon review of Plaintiff's motion to reconsider, the Court finds nothing contained therein suggests that the Court committed a legal error or relied on clearly erroneous factual findings, or that there is no rational basis in the evidence for the rulings resulting in the dismissal of Defendant Glanz from this action.  First, Plaintiff complains that he was unable to conduct legal research to respond to the Special Report, thereby resulting in denial of his right to access the Court.  (Dkt. # 78 at 5). He also complains that his legal mail was stamped "refused" when he had a court deadline of "7/10/12," id. at 8, and that a Deputy Clerk of Court returned to him mail addressed to the FBI, stamped "refused," id. at 3. Plaintiff alleges that these examples of his inability to access the Court "contributed to the dismissal of Glanz as a defendant."  Id. at 9.  However, Plaintiff fails to identify any legal authority that would have changed the outcome of the ruling on the motion to dismiss had he been able to conduct additional legal research.  Furthermore, the Court's ruling was not based on Plaintiff's failure to comply with a court-imposed deadline.  Therefore, Plaintiff has failed to demonstrate that his alleged inability to access the Court resulted in any error in the Court's ruling.

Next, Plaintiff alleges, for the first time, that he was improperly denied access to Tulsa County's Mental Health Court in violation of the Americans With Disabilities Act (ADA).  Id. at

12. However, nothing alleged by Plaintiff suggests that Defendant Glanz has any input in decisions concerning placement of inmates in the Mental Health Court program.  In addition, contrary to Plaintiff's allegations, nothing suggests that he was excluded from participation in the Mental Health Court program by reason of his disability, which is that he is mentally ill.  Under these facts, the ADA provides no basis for relief.  Plaintiff's lack of placement in the Mental Health Court program did not contribute to any error in the challenged ruling.

Plaintiff also argues that the medical and mental health care provided at the TCJ is inadequate and that Defendant Glanz is responsible based on his supervisory position.  Id. at 14.  In support of this claim, he alleges that "emergency speakers" within the jail have been "gutted out," allegedly pursuant to Defendant Glanz's authorization, resulting in "multiple serious injuries and deaths besides just the plaintiff."  Id.  These allegations are conclusory.  Plaintiff fails to explain how he was injured as a result of his inability to access a functional "emergency speaker."  The only physical injury Plaintiff claims to have suffered while at the TCJ resulted from the booking-in incident described in Count I.  However, nothing in Count I of the amended complaint referenced Plaintiff's inability to access a functional "emergency speaker."  Furthermore, Plaintiff does not allege that he himself has suffered injury or harm as a result of his inability to access a functional "emergency speaker" while in custody at the TCJ.  Plaintiff also claims that, because Defendant Glanz is aware of several inmates who died or who nearly died while in custody at the TCJ, Defendant Glanz knew of a "substantial risk of serious harm upon inmates" and is, therefore, liable for failure to protect.  Id. at 15.  As explained in the prior Opinion and Order, Plaintiff does not allege that he himself suffered harm as a result of any jail official's failure to protect him subsequent to being booked-in to the TCJ.  The Court finds no error in its ruling that the amended complaint

fails to state a claim as to Defendant Glanz in his individual capacity or official capacity for failure to protect, failure to provide adequate medical care, or failure to train.

In summary, none of Plaintiff's allegations contained in the motion for reconsideration suggest error in the Court's ruling dismissing Defendant Glanz. Therefore, Plaintiff's motion to reconsider that ruling shall be denied. The Court further finds that Plaintiff's request for "leave to amend to conform to the evidence," included in his motion for reconsideration, shall be denied.

### 4. Motion for preliminary injunction/motions for protection of incompetent person

In his motion "for extension [of] time and invoking the imminent danger status at the Tulsa County Jail and requesting a preliminary injunction and representative pursuant to Rules 17(c), 25(b), and 65(3)(d), & 65(3), protection for incompetent person" (Dkt. # 101), Plaintiff states that he has been found incompetent and requests that "a restraining order be put in place upon Sheriff Stanley Glanz to keep the medical corporation that he contracted out from performing any type of diagnosis, prognosis (including passing out medication) upon the plaintiff, and allow him outside medical care from qualified licensed professionals, etc." Id. at 1. Plaintiff also filed a second motion requesting appointment of a representative under Fed. R. Civ. P. 17(c) (Dkt. # 105). In support of his second request, Plaintiff provides a copy of a report, dated September 18, 2015, prepared by Scott Orth, Psy.D., Forensic Psychologist at the Oklahoma Forensic Center (OFC), finding Plaintiff incompetent to stand trial in Tulsa County District Court, Case No. CF-2014-3749, and recommending that he be committed for treatment and competency restoration.[9] Id. at 3-7. On

---

[9]In describing Plaintiff's current mental status, Dr. Orth wrote that "[w]hile Mr. Smith's expressed thoughts are coherent (understandable) and goal-directed, they evidence persecutory delusions (beliefs that one is being conspired against, followed, maliciously maligned, harassed, or obstructed), which he intricately intertwines into his current legal situation." (Dkt. # 105 at 4-5). Dr. Orth's description of Plaintiff's mental status is consistent with Plaintiff's claims and arguments

November 9, 2015, Plaintiff filed a notice of change of address, reflecting that he is currently housed at OFC where he is receiving mental health care.  <u>See</u> Dkt. # 110.  Because Plaintiff is receiving care from qualified licensed professionals outside of the TCJ, his request for a preliminary injunction is moot and shall be denied on that basis.  Furthermore, because the Court has determined herein that Plaintiff's claims either fail to state a claim or that Defendants are entitled to judgment as a matter of law, the Court finds that Plaintiff's requests for appointment of a representative under Fed. R. Civ. P. 17(c)(2) are moot.

**ACCORDINGLY, IT IS HEREBY ORDERED that**:

1. Plaintiff's motions to amend (Dkt. ## 75, 104) are **denied** based on futility.

2. Defendants' motion to strike Plaintiff's motion to amend (Dkt. # 106) is **declared moot**.

3. Plaintiff's motion to recuse and change venue (Dkt. # 77) is **denied**.

4. Plaintiff's motion "to reclaim Sheriff Stanley Glanz as defendant with leave to amend to conform to the evidence and to alter or amend a judgment pursuant to Rule 15(b),(d), 59(e)" (Dkt. # 78) is **denied**.

5. Plaintiff's motion "for extension [of] time and invoking the imminent danger status at the Tulsa County Jail and requesting a preliminary injunction and representative pursuant to Rules 17(c), 25(b), and 65(3)(d), & 65(3), protection for incompetent person" (Dkt. # 101) is **denied**.

6. Plaintiff motion "to compel representative to protect incompetent person pursuant to Rule 17(2)" (Dkt. # 105) is **denied**.

_____

presented in this case.

7.     Defendants' "motion to dismiss or alternatively motion for summary judgment" (Dkt. # 95)

is **granted** as follows:

    a.     The motion for summary judgment is **granted** as to Counts I and II.

    b.     The motion to dismiss is **granted** as to Count III.

8.     Defendants Robertson and Roberson are **dismissed without prejudice** from this action.

9.     This is a final Order terminating this action.

10.    A separate judgment shall be entered in favor of Defendants.

**DATED** this 18th day of December, 2015.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT